UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL
WELFARE, PENSION, AND ANNUITY
FUNDS, *et al.*,                                            :
                                      Plaintiffs,

                  -against-

AAL CONSTRUCTION SERVICES LLC,

                                    Defendant.

------------------------------------------------------------- x

**REPORT AND RECOMMENDATION**

25-CV-3419 (ENV)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund (collectively, the "Funds") sued Defendant AAL Construction Services, LLC, alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA").  (*See generally* Compl., ECF No. 1.)[1]  Before the Court is Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure Rule 55(a) and Local Civil Rule 55.2.  (*See generally* Mot., ECF No. 15.)  The Honorable Eric N. Vitaliano referred the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part and denied in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

## I.   BACKGROUND

### A.   Factual Allegations

The following facts are taken from the Complaint, and documents incorporated by reference into the Complaint, and are assumed to be true for the purposes of establishing liability. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated within the meaning of the LMRA.  (Compl., ECF No. 1 ¶ 4.)  The Funds are employee benefit plans within the meaning of ERISA and are administered from an office in Whitestone, New York.  (*Id.*)  Defendant is a limited liability company organized under the laws of the State of Delaware, engaged in the construction business, and has its principal place of business located at 1 Oak Point Avenue, Bronx, New York.  (*Id.* ¶ 5.)  Defendant is an employer engaged in an industry affecting commerce within the meaning of ERISA and the LMRA.  (*See id.*)

On or about May 25, 2022, Defendant entered into a collective bargaining agreement ("CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union") for the period between July 1, 2021 through June 30, 2024.  (*See id.* ¶ 10; Loscalzo Decl. Ex. A (CBA), ECF No. 16-1.)  The CBA incorporates the Trust Agreements which permit Plaintiffs to establish rules for administration of the CBA.  (*See* Loscalzo Decl. Exs. A–B (CBA & Trust Agt.), ECF Nos. 16-1 at 23–24 & 16-2; Compl., ECF No. 1 ¶¶ 11–12; *see generally* Montelle Decl. Exs. C–E (Trust Agts.), ECF Nos. 17-1 through 17-3.)

Pursuant to the CBA, Plaintiffs established a Policy for Collection of Delinquent Fringe Benefits Contributions (the "Collection Policy").  (Compl., ECF No. 1 ¶ 13.)  Under the CBA,

2

Defendant must remit specified benefit contributions to the Funds and related entities for all work performed by its employees within the Union's trade and geographical jurisdiction ("Covered Work") and specified dues check-offs and other contributions to the Union ("Union Assessments"). (*Id.* ¶¶ 14–15; *see generally* Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4; *see* Loscalzo Decl. Ex. A (CBA), ECF No. 16-1 at 23–27.) Defendant's contributions, Union Assessments, and a report of the number of hours of Covered Work performed are due to the Funds on the 35th day following the close of the month in which the hours were worked. (Compl., ECF No. 1 ¶¶ 16–17, 23; Loscalzo Decl. Ex. A (CBA), ECF No. 16-1 at 24; Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)

Under the Collection Policy, if an employer is delinquent in making contributions and does not submit the required remittance reports, the Funds are entitled to estimate the amount of delinquent contributions for each month. (Compl., ECF No. 1 ¶ 18.) Pursuant to the CBA and Collection Policy, if any employer fails to pay contributions when due, the employer is liable for interest on the unpaid contributions at the annual rate of 10%, liquidated damages in the amount of 10% of the unpaid contributions, and attorneys' fees if necessary to collect delinquent contributions. (*Id.* ¶¶ 19–20; Loscalzo Decl. Ex. A (CBA), ECF No. 16-1 at 26; Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)

Defendant failed to submit reports detailing the number of hours of Covered Work performed by its employees for the periods from August 2024 through April 2025, and therefore owes the Funds contributions, Union Assessments, and dues check-offs for this period. (Compl., ECF No. 1 ¶ 24.) Defendant also remitted contributions to the Funds for the periods April 2022 through October 2022 and January 2023 through July 2023 past the due dates and therefore owes late payment interest of $30,203.23. (*Id.* ¶ 25.) Plaintiffs allege that

3

Defendant is liable for unpaid contributions, Union Assessments, liquidated damages, interest, and Plaintiffs' attorneys' fees and collections costs.  (*See id.* ¶ 26.)

### B.    Procedural History

Plaintiffs initiated this action on June 18, 2025, and served Defendant with the summons and Complaint.  (Compl., ECF No. 1; Aff. of Service, ECF Nos. 6, 13.)  After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against it on July 23, 2025.  (Entry of Default, ECF No. 12.)  On August 20, 2025, Plaintiffs moved for default judgment and served Defendant with the motion for default judgment by mail at Defendant's last known business address and by email.  (*See generally* Mot., ECF No. 15; Cert. of Service, ECF No. 21.)  Judge Vitaliano referred the motion for report and recommendation.  (Aug. 21, 2025 Referral Order.)  To date, Defendant has not appeared or responded to the motion.

## II.    <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter default.  Fed. R. Civ. P. 55(a).  If a claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To enter or effectuate judgment the Court is

4

empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'a default only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.    JURISDICTION & VENUE

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' claims pursuant to ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1451(c); and pursuant to the LMRA, 29 U.S.C. § 185(c).  *See* 28 U.S.C. § 1331.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)

5

(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

The Court has personal jurisdiction over Defendant. *First*, Plaintiffs served Defendant by delivering copies of the summons and Complaint to the New York Secretary of State. (Aff. of Service, ECF No. 6.) This method of service comports with federal and state law for service of process on a limited liability company. Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. Ltd. Liab. Co. Law §§ 301(a), 303. *Second*, the Court has general jurisdiction over Defendant because, while it is a Delaware limited liability company, Defendant has its principal place of business in New York. (Compl., ECF No. 1 ¶ 5.) A court may exercise general jurisdiction over a defendant that is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). *Finally*, "[s]ince jurisdiction is proper for [the Defendant] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018). Defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).[2]

---

[2] Further, Plaintiffs rely on ERISA Section 502(e)(2) as the proper statutory basis for personal jurisdiction over Defendant. *See* 29 U.S.C. § 1132(e)(2); *see also Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp.*, No. 24-CV-6632 (RPK)(MMH), 2025 WL 2682626, at *3 (E.D.N.Y. Sept. 19, 2025) ("Section 502(e)(2) of ERISA . . . 'has been interpreted as a "nationwide service of process" provision that confers personal jurisdiction over a defendant so long as they have minimum contacts in the United States.'") (quoting *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Tuckahoe Tile, Inc.*, No. 15-CV-5535 (RJD)(CLP), 2016 WL 8711716, at *3 (E.D.N.Y. Sept. 2, 2016), *adopted sub nom. by Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Tuckahoe Tile, Inc.*, No. 15-CV-5535 (RJD)(CLP), 2016 WL 8711437 (E.D.N.Y. Sept. 30, 2016),

6

### C.    Venue

An action to recover unpaid contributions under ERISA may be brought in the district where the plan is administered.  29 U.S.C. §§ 1132(e)(2) & 1451(d).  Because the Funds are administered in Whitestone, New York, venue in this district is appropriate.

## IV.    __DEFAULT JUDGMENT FACTORS__

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment."  *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025).  Specifically, courts examine:  "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6331 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiffs' favor.  *First*, Defendant's "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct."  *See*

---

Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."), and *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Caesar Max Const. Inc.*, No. 18-CV-1339 (FB)(LB), 2019 WL 1130727, at *5 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1129430 (E.D.N.Y. Mar. 12, 2019)), *adopted by* Order Adopting R. & R., *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp.*, No. 24-CV-6632 (RPK)(MMH) (E.D.N.Y. Oct. 15, 2025).

*Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). Because Defendant was properly served, its failure to respond or otherwise appear in this action demonstrates willfulness. *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, the Funds and Plaintiffs will be prejudiced if the motion for default judgment is denied because they have "'no alternative legal redress.'" *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-537 (FB)(MMH), 2025 WL 819918, at *4 (E.D.N.Y. Mar. 16, 2025), *adopted by* 2025 WL 953135 (E.D.N.Y. Mar. 31, 2025) (quoting *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017)). In other words, because Defendant has failed to respond or otherwise appear in this action, without the entry of default judgment, the Funds would be unable to recover the unpaid contributions. *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub. nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2555840 (S.D.N.Y. June 22, 2021). Based on the foregoing, entry of default judgment is permissible.

## V.     LIABILITY

### A.     ERISA

Section 515 of ERISA provides that an employer "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at *3 (E.D.N.Y. Aug. 10, 2022), *adopted by* Order Adopting R. & R., *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP) (E.D.N.Y. Sept. 29, 2022).  To establish a violation of Section 515, Plaintiffs must plausibly allege that Defendant is: (1) an employer; (2) bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *Toros Bros. Constr. Corp.*, 2025 WL 819918, at *4 (citation omitted).

The facts alleged in the Complaint establish Defendant's liability.  *First*, Plaintiffs allege that Defendant is an employer and that the Funds are employee benefit plans, both within the meaning of ERISA. (Compl., ECF No. 1 ¶¶ 4–5.) *Second*, Plaintiffs allege that Defendant was bound by a CBA and Collection Policy that required Defendant to remit benefit contributions and Union Assessments to the Funds according to the number of Covered Work hours its employees performed. (*Id.* ¶¶ 14–16, 23.)  Plaintiffs allege that, per these obligations, Defendant was required to submit remittance reports detailing the Covered Work hours. (*Id.* ¶ 17.) *Finally*, Plaintiffs allege that Defendant failed to make contributions timely or at all and failed to submit remittance reports pursuant to its obligations. (*Id.* ¶¶ 23–25.)

9

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' ERISA claim for unpaid contributions.

**B.      LMRA**

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  "Under the LMRA, if an employer fails to make contributions to employee benefit plans as required by an agreement, [the employer] may be held liable."  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at \*2 (E.D.N.Y. Oct. 10, 2023) (citation omitted), *adopted by* Order Adopting R. & R. *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER) (E.D.N.Y. June 11, 2025).

Here, the facts alleged in the Complaint also establish Defendant's liability under the LMRA.  *First*, Plaintiffs allege that they are trustees of multiemployer labor management trust funds operating in accordance with the LMRA.  (Compl., ECF No. 1 ¶ 4.)  *Second*, Plaintiffs allege that Defendant was an "employer in an industry affecting commerce within the meaning . . . of the LMRA."  (*Id.* ¶ 5.)  As stated above, Plaintiffs allege that Defendant was obligated to remit benefit contributions, Union Assessments, and periodic reports regarding the amount of Covered Work performed yet failed to do so.  (*See id.* ¶¶ 14–17, 23–25).  "Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA."  *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL

10

5830338, at \*4 (E.D.N.Y. July 31, 2023), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' LMRA claim for unpaid dues and assessments.

## VI.    **DAMAGES**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Instead, the Court must be satisfied that Plaintiffs have met "'the burden of proving damages to the Court with reasonable certainty.'" *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Graci Paving Assocs., Inc.*, No. 25-CV-3937 (NJC)(LGD), 2026 WL 179891, at \*7 (E.D.N.Y. Jan. 22, 2026) (quoting *Gov't Emps. Ins. Co. v. Onyema*, 790 F. Supp. 3d 147, 166 (E.D.N.Y. 2025)), *adopted sub nom. by Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Graci Paving Assocs., Inc.*, No. 25-CV-3937 (NJC)(LGD), 2026 WL 540766 (E.D.N.Y. Feb. 26, 2026). "To evaluate the proposed damages, the court 'may rely on detailed affidavits or documentary evidence.'" *Focus Constr. Grp.*, 2023 WL 7687844, at \*2 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable [attorneys'] fees and costs; [and] (e) other relief the court deems appropriate." *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER), 2020 WL

11

9814085, at *4 (E.D.N.Y. Feb. 25, 2020) (citing 29 U.S.C. § 1132(g)(2)), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER) (E.D.N.Y. Mar. 21, 2020).  "In contrast, although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements."  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019) (citation omitted), *adopted sub nom. by Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019).

Here, Plaintiffs seek the following damages: (1) estimated delinquent contributions; (2) interest on the estimated delinquent contributions; (3) estimated Union Assessments; (4) late payment interest for unpaid Union Assessments; (5) liquidated damages; (6) attorneys' fees and costs; and (7) post-judgment interest.  (Compl., ECF No. 1 at 8–9; Mem., ECF No. 20 at 12–21.)  To support these requests, Plaintiffs rely on the declarations of Keith Loscalzo, an officer of the Union (Loscalzo Decl., ECF No. 16); Joseph Montelle, the Funds' administrator (Montelle Decl., ECF No. 17); Wendy Morris, Plaintiffs' Accounting Manager from a third-party administrator, Zenith American Solutions, Inc. ("Zenith") (Morris Decl., ECF No. 18); and Lillianna Iorfino, Plaintiffs' counsel (Iorfino Decl., ECF No. 19), along with supporting exhibits.

### A.  Delinquent Contributions & Union Assessments

Plaintiffs seek $188,530.43 in estimated ERISA contributions and $7,504.61 in estimated Union Assessments for the periods August 2024 through May 2025,[3] when Defendant did not submit monthly remittance reports.  (Mem., ECF No. 20 at 14–17; Montelle Decl., ECF No. 17 ¶¶ 12, 26–27; Morris Decl., ECF No. 18 ¶ 9.)

As noted, Defendant was required to submit reports detailing the number of hours worked by each employee 35 days after the close of the month during which the work was performed.  (Compl., ECF No. 1 ¶¶ 17, 23; Loscalzo Decl. Ex. A (CBA), ECF No. 16-1 at 24; Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)  According to the Collection Policy, when an employer fails to submit remittance forms, Plaintiffs may estimate the amount of delinquency.  (Montelle Decl., ECF No. 17 ¶ 13; Compl., ECF No. 1 ¶ 18; Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 9–10.)  Under the Collection Policy's Estimation Protocol, Plaintiffs calculate the delinquency as "the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three [] months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve [] months for which payments and reports were submitted."  (Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 9–10.)

---

[3] The Court notes a discrepancy between the Complaint's ad damnum clause, which seeks, *inter alia,* unpaid contributions, union assessments, and interest for the period August 2024 through April 2025 and Plaintiffs' default judgment motion papers, which seek the same damages for the period August 2024 through May 2025.  (*Compare* Compl., ECF No. 1 at 8–9 *with* Mem., ECF No. 20 at 14–17.)  The allegations in the Complaint's ad damnum clause govern the damages awarded on default.  *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 401 (S.D.N.Y. 2012).

Applying this protocol, Plaintiffs estimated the delinquency for this period using the remittance reports and payment from May 2022 through June 2023, the last twelve months for which Defendant submitted payment.[4]   (Montelle Decl., ECF No. 17 ¶ 14; *id.* Ex. G (remittance reports), ECF No. 17-5; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).) *First*, using these reports, Plaintiffs determined the total amount of contributions and Union Assessments paid each month during the most recent three-month period.  (Montelle Decl., ECF No. 17 ¶¶ 15–16; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).)[5]   This calculation is performed for every month for the most recent twelve months for which hours were reported and paid, and then the Funds determine the higher of the twelve-month average versus the three-month average.  (Montelle Decl., ECF No. 17 ¶¶ 16–17.)  For the period between May 2022 through June 2023, Plaintiffs calculated that the three-month contribution average is $7,152.78 and the twelve-month average is $19,603.50.  (*See id.* ¶ 17; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).)[6]   Pursuant to the Collection Policy, the Funds use the higher of the two figures, which is the twelve-month average—*i.e.*, $19,603.50.

---

[4] Plaintiffs use this twelve-month period because (1) contributions for July through October 2022 and January through June 2023 were funded through a settlement agreement, which has been paid in full and thus the contributions have been paid; and (2) the reports submitted for November and December 2022 showed that the employer did not perform any Covered Work during those months.  (Montelle Decl., ECF No. 17 ¶ 14 n.1; *id.* Ex. G (remittance reports), ECF No. 17-5.)

[5] Plaintiffs determine the total amount of contributions and assessments paid for each month by adding the amounts owed to the Pavers Welfare Fund, Income Replacement Benefit Fund, Pavers Pension Fund, Pavers Annuity Fund, Local 1010 Training Fund, Local 1010 LECT, NYS LECET, and NYS Laborers Health and Safety Fund (the sum of which, the "Total Benefit Rate").  (Montelle Decl., ECF No. 17 ¶ 15.)

[6] Montelle's declaration states the correct sum for the three-month average ($21,458.35) but inexplicably divides $23,575.86 by 3 to obtain the three-month average.  (Montelle Decl., ECF No. 17 at 4 n.4.)  Despite this discrepancy, the declaration correctly calculates the three-month average as $7,152.78.  (*Id.*)  For the 12-month average contributions, the Court calculates the sum for the period as $235,242.**07** but will adopt Plaintiffs' sum of $235,242.**05**.  (*See id.*)

14

(Montelle Decl., ECF No. 17 ¶ 17; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet); *id.* Ex. F (Collection Policy), ECF No. 17-4 at 9–10.)

*Second*, Plaintiffs estimated the number of hours worked for the delinquent period by dividing the twelve-month contribution average by the Total Benefit Rate applicable to the period.   (Montelle Decl., ECF No. 17 ¶ 18; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).)  Here, Defendant's delinquency period spans from July 1, 2024 through June 30, 2025. (Montelle Decl., ECF No. 17 ¶ 19; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet); *id.* Ex. I (rates), ECF No. 17-7.)   For example, the Total Benefit Rate was $53.55.  (Montelle Decl. Ex. I (rates), ECF No. 17-7.)  The twelve-month contribution average ($19,603.50) divided by the benefit rate ($53.55) yields an average of 366.08 hours per month for August 2024 through May 2025.  (Montelle Decl., ECF No. 17 ¶ 20; *id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).) [7]

*Third*, Plaintiffs multiplied the average number of hours for the delinquent period by the benefit rate for each respective fund to determine the average contribution due to each fund per month for the delinquency period.  (Montelle Decl., ECF No. 17 ¶ 21.)  *Finally*, Plaintiffs multiplied the number of months the employer failed to submit reports by the sum of two formulas: (1) for estimated monthly contributions, Plaintiffs added the totals for the Pavers Welfare Fund, Income Replacement Benefit Fund, Pavers Pension Fund, and Pavers Annuity Fund; and (2) for estimated monthly Union Assessments, Plaintiffs added the totals for Local 1010 Training Fund, Local 1010 LECT, NYS LECET, and NYS Laborers Health and Safety

---

[7] For this period, Plaintiffs exclude amounts owed to the Heavy Construction Industry Fund (*i.e.*, $0.30) from the Total Benefit Rate (*i.e.*, $53.85).  (*See* Montelle Decl., ECF No. 17 ¶ 20; *id.* Ex. I (rates), ECF No. 17-7.)

Fund.  (*Id.* ¶¶ 22–25.)  Using this methodology, Plaintiffs estimate $18,853.04 in unpaid contributions and $750.46 in unpaid Union Assessments per month for the ten-month period between August 2024 and May 2025.  (*Id.* ¶¶ 23–27.)

The Court has reviewed Plaintiffs' calculations and finds them to be accurate.  (*See id.* Ex. H, ECF No. 17-6 at 1 (Estimation Spreadsheet).)  However, in the Complaint, Plaintiffs allege that Defendant failed to submit reports detailing the number of hours of Covered Work performed by its employees for the periods from August 2024 through April 2025, and accordingly, owes the Funds contributions, Union Assessments, and dues check-offs for this same period.  (Compl., ECF No. 1 at 8–9.)  Now, for the first time and upon seeking default, Plaintiffs assert that the relevant period is August 2024 through May 2025.  (Mem., ECF No. 20 at 14–17) (emphasis added).  As noted (*see* § VI.A., *supra*), the allegations in the Complaint's ad damnum clause govern the damages on default.  As such, multiplying the sum of unpaid contributions and Union Assessments in the respective periods by nine months, as alleged in the Complaint (August 2024 through April 2025) yields the following: $169,677.36 in total unpaid contributions ($18,853.04 unpaid monthly contributions x 9 months) and $6,754.14 in unpaid Union assessments ($750.46 unpaid monthly Union Assessments x 9 months).

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$169,677.36** in unpaid contributions and **$6,754.14** in Union Assessments for the period of August 2024 through April 2025.

### B.    Interest on Unpaid Contributions

Plaintiffs seek $8,659.74 in interest on unpaid contributions through August 5, 2025. (Mem., ECF No. 20 at 21; Montelle Decl., ECF No. 17 ¶ 29.)

16

ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of [the Internal Revenue Code of 1986]." *See* 29 U.S.C. § 1132(g)(2)(B).  Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date.  (Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)  The Court may award accrued pre-judgment interest on the unpaid contributions.  *Cape Mount Heavy Constr. & Assocs., LLC*, 2023 WL 5830338, at *8.

Plaintiffs use the following formula to calculate interest for estimated delinquent contributions and assessments: (1) determine the number of days the contributions are late (*i.e.*, the number of days between the due date and August 5, 2025); (2) calculate the daily rate interest by multiplying the contributions due per month by 10% as provided in the CBA and Collection Policy; (3) divide the full year of interest by 365 days; and (4) multiply the daily interest rate by the number of days the contributions are late.  (Montelle Decl., ECF No. 17 ¶ 30; *id.* Ex. H, ECF No. 17-6 at 2 (Interest Calculation).)

For example, for August 2024, Defendant owed $18,853.04 in contributions that were due on October 5, 2024 (35 days after the close of the month) as per the CBA and Collection Policy.  (Loscalzo Decl. Ex. A (CBA), ECF No. 16-1 at 23–25; Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3; *id.* ECF No. 17 ¶ 30; *id.* Ex. H, ECF No. 17-6 at 2 (Interest Calculation).)  As of October 5, 2024, contributions due for August 2024 were 304 days late.  The total yearly interest due for the August 2024 contributions was calculated as $1,885.30 ($18,853.04 x 10%), then divided by 365 days to yield a daily interest rate of $5.17.  (Montelle Decl., ECF No. 17 ¶ 30; *id.* Ex. H, ECF No. 17-6 at 2 (Interest Calculation).)  The

17

daily interest rate was then multiplied by 304 days to yield total interest of $1,571.68 for the August 2024 contributions.  Plaintiffs repeated this calculation for September 2024 through May 2025.  (Montelle Decl., ECF No. 17 ¶ 31.)

The Court has reviewed Plaintiffs' interest calculations and has confirmed their accuracy.  (*Id.* ¶¶ 30–31; *id.* Ex. H, ECF No. 17-6 at 2 (Interest Calculation).)  However, as discussed *supra*, the Court will only consider the period alleged in the Complaint—August 2024 through April 2025—for purposes of calculating damages.  As such, the Court recommends awarding interest as follows:

| Month | Due Date | Interest through | Contributions | Days Late | Daily Interest | Total Interest |
|---|---|---|---|---|---|---|
| 8/31/2024 | 10/5/2024 | 8/5/2025 | $18,853.04 | 304 | $5.17 | $1,571.68 |
| 9/30/2024 | 11/4/2024 | 8/5/2025 | $18,853.04 | 274 | $5.17 | $1,416.58 |
| 10/31/2024 | 12/5/2024 | 8/5/2025 | $18,853.04 | 243 | $5.17 | $1,256.31 |
| 11/30/2024 | 1/4/2025 | 8/5/2025 | $18,853.04 | 213 | $5.17 | $1,101.21 |
| 12/31/2024 | 2/4/2025 | 8/5/2025 | $18,853.04 | 182 | $5.17 | $940.94 |
| 1/31/2024 | 3/7/2025 | 8/5/2025 | $18,853.04 | 151 | $5.17 | $780.67 |
| 2/28/2024 | 4/4/2025 | 8/5/2025 | $18,853.04 | 123 | $5.17 | $635.91 |
| 3/31/2025 | 5/5/2025 | 8/5/2025 | $18,853.04 | 92 | $5.17 | $475.64 |
| 4/30/2025 | 6/4/2025 | 8/5/2025 | $18,853.04 | 62 | $5.17 | $320.54 |
| | | | **$169,677.36** | | | **$8,499.48** |

Plaintiffs also request additional interest from August 6, 2025 through the date of judgment.  (*See* Iorfino Decl. Ex. U, ECF No. 19-10 at 2 ¶ (c) (proposed judgment).)  This daily interest rate was calculated by combining the daily interest rate for the nine unpaid contribution months (*i.e.*, $5.17 daily interest rate for the nine months from August 2024 through April 2025).  *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618 at *8 (E.D.N.Y. Sept. 12, 2023) (calculating the daily interest rate through the date of judgment

18

by combining the daily interest rate for all unpaid contribution months), *adopted by* 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023).

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$8,499.48** in interest for unpaid contributions calculated through August 5, 2025, and additional interest at a daily rate of **$46.53** from August 5, 2025, through the date of judgment.

### C.    Interest on Late-Paid Union Assessments

Plaintiffs seek $30,203.23 in late payment interest for the periods of April 2022 through October 2022 and January 2023 through July 2023, during which Defendant paid the Union Assessments late.  (Mem., ECF No. 20 at 17–18; Montelle Decl., ECF No. 17 ¶ 33; Morris Decl., ECF No. 18 ¶ 18.)

Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date.  (Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)  Plaintiffs calculated late payment interest on the Union Assessments using the same methodology described for calculating interest on the unpaid contributions, except that Plaintiffs calculate the number of days between the Union Assessments' due date and the date when they were paid (not August 5, 2025).  (Morris Decl., ECF No. 18 ¶ 16.)  Plaintiffs submit a late payment interest report generated by Zenith.  (*Id.* Ex. K (Interest Report), ECF No. 18-2.)  The Court has reviewed these calculations and finds them to be correct.  There are no discrepancies with the calculations between the Complaint and motion papers for late payment interest dates.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$30,203.23** in late payment interest for the periods of April 2022 through October 2022 and January 2023 through July 2023.

### D.    Liquidated Damages

Plaintiffs seek $18,853.04 in liquidated damages on the unpaid contributions but not on the unpaid Union Assessments.  (Mem., ECF No. 20 at 21; Montelle Decl., ECF No. 17 ¶ 32.)

"ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions)." *Toros Bros. Constr. Corp.*, 2025 WL 819918, at *8 (citing *Coastal Env't Grp. Inc.*, 2019 WL 4603805, at *12 and 29 U.S.C. § 1132(g)(2)(C)). Under the Collection Policy, "[Defendant] shall be liable for the payment of . . . liquidated damages of ten percent (10%) of the amount of delinquent Contributions owing."  (Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)

Plaintiffs accurately calculated the liquidated damages for the period between August 2024 through May 2025 by multiplying the unpaid contributions by 10% for a total of $18,853.04 (*i.e.*, $188,530.43 x 10%).  (Montelle Decl., ECF No. 17 ¶ 32.)  However, as discussed herein, the time frame alleged in the Complaint governs the damages awarded on default.  (*See* § VI.A., *supra*.)  As such, the liquidated damages for the relevant period, August 2024 through April 2025, should be calculated by multiplying the unpaid contributions for this period by 10% for a total of $16,697.74 (*i.e.*, $169,677.36 x 10%).

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$16,697.74** in liquidated damages.

### E.    Attorneys' Fees

Plaintiffs request $8,714.36 in attorneys' fees for 29.4 hours of work.  (Mem., ECF No. 20 at 18–21; Iorfino Decl., ECF No. 19 ¶ 25; Iorfino Decl. Ex. S (Attorney Billing Records), ECF No. 19-8.)[8]

ERISA allows for an award of reasonable attorneys' fees and costs to be paid by defendants.  29 U.S.C. § 1132(g)(2)(D).  Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of . . . all costs including . . . attorneys' fees."  (Montelle Decl. Ex. F (Collection Policy), ECF No. 17-4 at 3.)  However, district courts have broad discretion to determine the amount of attorneys' fees.  *Graci Paving Assocs.*, Inc., 2026 WL 179891, at *10.

In the Second Circuit, courts calculate a "presumptively reasonable fee" by examining the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by a case.  *Cape Mount Heavy Constr. & Assocs., LLC*, 2023 WL 5830338, at *10 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183–184 (2d Cir. 2008)).  To determine a reasonable hourly rate, the court looks to the hourly rates that attorneys charge for comparable work.  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at *4 (E.D.N.Y. Sept. 28, 2023), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023).  "The party seeking reimbursement of [attorneys'] fees bears the burden of proving reasonableness and the necessity of the hours spent and rates

---

[8] Plaintiffs' memorandum of law simultaneously requests $8,714.36 and $8,222.40 in attorneys' fees. (*Compare* Mem., ECF No. 20 at 19 *with id.* at 20.)  The Court excuses this scrivener's error because the supporting documents for this request state $8,222.40.  (Iorfino Decl., ECF No. 19 ¶ 25; Iorfino Decl. Ex. S (Attorney Billing Records), ECF No. 19-8.)

charged." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*10 (citations omitted). A request for attorneys' fees must include contemporaneous time records that specify, for each attorney, the hours expended and the nature of the work done. *Regal USA Concrete*, 2023 WL 7413837, at \*3. "In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### 1.    Hourly Rate

Plaintiffs request attorneys' fees based on the following hourly rates: (1) $333 for associate attorney Iorfino, who graduated from law school in 2022; (2) $333 for partner Adrianna Grancio, who graduated from law school in 2016; and (3) $132 for legal assistants Eva Keating, Abigail Frankel, Alice Gaalswyk, and Rahul James. (Iorfino Decl., ECF No. 19 ¶¶ 16–22; *id.* Ex. S (Attorney Billing Records), ECF No. 19-8.)

"In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at \*6 (E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023)); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Site Fencing, Inc.*, No. 23-CV-2680 (HG)(MMH), 2024 WL 1082700, at \*9 (E.D.N.Y. Mar. 11, 2024) ("The ordinary rates for attorneys in the Eastern District of New York are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates."), *adopted by* Order Adopting R. & R., *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Site Fencing, Inc.*, No. 23-CV-2680 (HG)(MMH)

(E.D.N.Y. Mar. 30, 2024); *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–45, at *6 (E.D.N.Y. Jan. 21, 2025) (adjusting reasonable hourly rates for inflation and market conditions to $450–$650 per hour for partners, $300–$450 per hour for senior associates, and $150–$300 per hour for junior associates); *USA Roofing Co. Corp.*, 2023 WL 6318618 at *9 (E.D.N.Y. Sept. 12, 2023) (collecting cases and noting that courts have also awarded up to $150 for non-attorney support staff).

"With respect to the blended hourly rate sought for the attorneys' time, given the rates which courts in this district generally award, the Court finds $333 to be reasonable." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-6634 (HG), 2025 WL 3265230, at *11 (E.D.N.Y. Nov. 24, 2025) (awarding similar fees to Plaintiffs' counsel's firm); *see also id*. n.10 ("The Court acknowledges that the blended billing rate does not account for the disparity in experience between the lawyers . . . . However, the Court finds that the blended rate is reasonable because, '[f]or starters, it is the actual rate that was negotiated with the clients, which is obviously strong evidence of what the market will bear.'") (quoting *Pig Newton, Inc. v. The Boards of Directors of the Motion Picture Indus. Pension Plan*, No. 13-CV-7312, 2016 WL 796840, at *5 (S.D.N.Y. Feb. 24, 2016)); *Graci Paving Assocs.*, 2026 WL 179891, at *11 ("Although the demarcation between a junior and senior associate is inexact, the undersigned finds that—given her five years of legal experience and notable attention to this matter—Ms. Iorfino's $333 hourly rate is reasonable.").

### 2.    Reasonable Hours Expended

Counsel requests attorneys' fees based on a total of 29.4 hours of work, including 17.1 hours for attorney Iorfino, 4.5 hours for attorney Grancio, 1.2 hours for legal assistant Keating,

1.9 hours for legal assistant Frankel, 1.3 hours for legal assistant Gaalswyk, and 3.4 hours for legal assistant James.  (Iorfino Decl., Ex. S (Attorney Billing Records), ECF No. 19-8.) Plaintiffs have submitted contemporaneous time records that detail the work performed by their counsel and legal staff.  After a careful review of the records, the Court finds the billed activities to be reasonable and not excessive, redundant, or unnecessary.  Additionally, the number of hours expended in this case is within the range of reasonable hours expended in ERISA cases involving a default judgment.  *See, e.g.*, *Site Fencing, Inc.*, 2024 WL 1082700, at \*10 (awarding 29.4 hours of work in an ERISA default judgment to Plaintiffs' counsel); *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*12 (recommending awarding 48.8 hours for attorneys' fee in ERISA action where Plaintiffs' counsel reviewed extensive records and prepared several declarations).

Accordingly, the Court respectfully recommends an award of **$8,222.40** in attorneys' fees.

### F.    Costs

Plaintiffs seek $492.36 in costs, including $405 in filing fees, $7.86 in postage and $79.50 in process server fees.  (Iorfino Decl., ECF No. 19 ¶ 18; *id.* Ex. S (Attorney Billing Records), ECF No. 19-8 at 8; Mem., ECF No. 20 at 21.)

"'When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients.'"  *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG)(RML), 2023 WL 7688689, at \*7 (E.D.N.Y. June 20, 2023) (quoting *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB)(RER), 2020 WL 6370060, at \*5 (E.D.N.Y. May 27, 2020), *adopted by* 2020 WL

5587271 (E.D.N.Y. Sept. 17, 2020) and citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)), *adopted by* Order Adopting R. & R., *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG)(RML) (E.D.N.Y. July 11, 2023).

Most of Plaintiffs' costs are recoverable. *First*, Plaintiffs are entitled to the $405 filing fee for this case because the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023). *Second*, Plaintiffs also submit an invoice to support the service costs. (Iorfino Decl. Ex. T, ECF No. 19-9 at 1.) However, the record does not support an award of postage costs because Plaintiffs only submits a price list in support of this cost instead of receipts for paid postage. (*See id.* at 2–5.) Accordingly, the Court finds the costs for the filing fee and service of process to be documented and reasonable, and therefore, respectfully recommends that Plaintiffs should be awarded **$484.50** in costs.

### G.    Post-Judgment Interest

"[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiffs should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

25

## VII.   CONCLUSION

For all the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 10 should be **granted in part and denied in part** as follows: (1) a default judgment should be entered against Defendant AAL Construction Services LLC[9] and (2) Plaintiffs should be awarded damages in the amount of **$240,538.85**, which includes: (a) **$169,677.36** in unpaid contributions and **$6,754.14** in Union Assessments for the period August 2024 through April 2025; (b) **$8,499.48** in accrued interest on unpaid contributions calculated through August 5, 2025, and any accrued interest of **$46.53** per day from August 6, 2025 until the date judgment is entered; (c) **$30,203.23** in late payment interest for the periods of April 2022 through October 2022 and January 2023 through July 2023; (d) **$16,697.74** in liquidated damages on the unpaid ERISA contributions; (e) **$8,222.40** in attorneys' fees; (f) **$484.50** in costs; and (g) post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation to Defendant AAL Construction Services LLC at 1 Oak Point Avenue Bronx, New York 10474 and by email to the addresses listed in Plaintiffs' certificate of service at ECF No. 21.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Vitaliano.  If a

---

[9] Plaintiffs' proposed default judgment (Iorfino Decl. Ex. U, ECF No. 19-10) should be amended to reflect the recommendations herein, if adopted.

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 31, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge